UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

JON PEARSON  and                )
                                )
TARA GUNNIGLE                   )
                                )        No. _____
Plaintiffs,                     )
                                )        **Jury Trial Demanded**
v.                              )
                                )
PAUL GLAZER, M.D.,              )
and
PAUL GLAZER, M.D., P.C.

Defendants.

## COMPLAINT

1.      Plaintiffs Jon Pearson and Tara Gunnigle, by and through their attorneys, bring

this complaint seeking compensation for harm caused by Defendant Paul Glazer, M.D. ("Glazer"),

Defendant Paul Glazer, M.D., P.C. (the "Professional Corporation"), and their employees, agents,

and/or contractors (together with Glazer and the Professional Corporation, referred to herein as

"the Responsible Parties"), and seek justice for the permanent injuries to Jon after the

Responsible Parties failed to render proper and appropriate care and treatment in accordance

with the recognized standards of acceptable professional practice. Jon and Tara hereby allege as

follows based on their personal experience and available medical records.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there

is complete diversity of citizenship and the amount in controversy exceeds $75,000.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), in that a substantial

part of the events or omissions giving rise to the claim occurred in this District.

1

## THE PARTIES

4.      Plaintiff Jon Pearson is an individual who resides at 93 Lake Road, Webster, New Hampshire 08803.  Jon suffered injuries as a result of the actions and inaction of the Responsible Parties and the professionals under their direction and control, and brings this complaint seeking the relief requested herein.

5.      Plaintiff Tara Gunnigle is an individual who resides at 93 Lake Road, Webster, New Hampshire 08803.

6.      Tara and Jon have been long term partners, common law spouses.  Tara has suffered injury due to the Responsible Parties' actions and inactions that have harmed Jon.

7.      Defendant Paul Glazer, M.D., upon information and belief, is an individual with a business address of 822 Boylston Street, Chestnut Hill, Massachusetts 02467, and who resides in Boston Massachusetts.

8.      Upon information and belief, Defendant Paul Glazer, M.D., P.C. ("the Professional Corporation"), was, at all times relevant to this complaint, a Massachusetts professional corporation with a mailing address of 545 Hammond Street, Chestnut Hill, Massachusetts 02467. Dr. Glazer was the President, Treasurer, Secretary and Director of the Professional Corporation.  The Professional Corporation provided, along with Dr. Glazer, professional medical services, specializing in surgery of the spine.

## FACTUAL OVERVIEW

9.      Plaintiff Jon Pearson seeks justice for the painful and lasting damage he suffered at the hands of health care providers he trusted to take care of him and not to harm him.

10.      Instead of rendering proper and appropriate care to him, Dr. Glazer and the Professional Corporation damaged Jon's left and right arm and shoulder requiring him to obtain

further medical care, including but not limited to two surgeries one on his left shoulder, and one on his right shoulder by Dr. Jeffrey Zilberfarb, M.D. , extensive therapy, and the loss of the substantial use of his left arm.

11.    Jon's injuries are devastating.  Had Dr. Glazer and the professionals under his direction rendered proper and appropriate care, Jon would still have the use of his left arm and the ability to work and use his arm as he had before the operation.

### ADDITIONAL FACTS AND ALLEGATIONS RELEVANT TO ALL CLAIMS

12.    On January 27, 2021, Jon was involved in a motor vehicle collision when a truck ran through a stop sign and collided with the vehicle in which he was a passenger.

13.    Jon suffered various injuries in the collision.

14.    On March 3, 2022, Dr. Glazer operated on Jon's neck at St. Elizabeth's Hospital, an Anterior Cervical Discectomy and Fusion at the C3 to C6 levels of his spine, to address Jon's severe pain in his left arm and hand.

15.    In his follow up appointments with Dr. Glazer after the surgery, Jon noted left shoulder weakness, restriction in his ability to lift his left arm, some paresthesia in his left hand, and pain in his right shoulder as well.

16.    One of Dr. Glazer's assistants informed Jon that the likely cause of his shoulder pain was the traction used to stabilize his body during surgery, which was a normal occurrence, and would resolve naturally.

17.    Consistent with this, Dr. Glazer documented Jon's medical records that the bilateral shoulder pain and the left and right shoulder weakness was most likely due to chronic degeneration due to rotator cuff disease or left C5 palsy. Dr. Glazer recommended an MRI to rule out labral tears or osteoarthritis as the causes of his shoulder pain.

18.     On June 10, 2022, in a telephone consultation, Dr. Glazer informed Jon that the MRI showed bilateral rotator cuff tears in both shoulders that were likely chronic, that is, deterioration from the disease process over a long period of time.

19.     Dr. Glazer referred Jon to Dr. Jeffrey Zilberfarb, M.D., a Boston based orthopedic surgeon, regarding what might be done to address his "Post-op shoulder pain related to degenerative rotator cuff disease".

20.     Dr. Zilberfarb operated on Jon's left shoulder in February 2023 and on his right shoulder in March 2023.

21.     Jon did not find any relief to the pain or weakness or limited range of motion in his left shoulder after Dr. Zilberfarb operated on that shoulder.

22.      In March 2024, Jon consulted with Dr. Douglas Goumas, M.D., in Bedford, New Hampshire, of New Hampshire Orthopaedic Center, regarding his left shoulder pain, weakness, and physical limitations.

23.     Professionals at New Hampshire Orthopaedic Center informed Jon in March 2024 that his left and right shoulder pain, weakness, and physical limitations experienced after the March 2022 surgery conducted by Dr. Glazer were not caused by chronic disease. Rather, Jon's shoulders had been improperly and negligently overextended during the operation conducted by Dr. Glazer, causing bilateral rotator cuff tears, damaging the tendons and muscles that support the shoulder joint, leading to pain, weakness, and difficulty with arm movements. Jon was informed at that time that Dr. Glazer's failure to protect against those harms was malpractice.

24.     As the surgeon in charge of the March 2022 neck surgery, Dr. Glazer was responsible to make sure that Jon's shoulder were properly extended, and not overextended.  Dr.

4

Glazer failed in that regard, causing Jon's rotator cuffs to be overextended, damaging the tendons

and muscles that support the shoulder joint, necessitating surgical repair.

25.     Dr. Goumas conducted a left shoulder arthroscopy rotator cuff repair with

acromioplasty in March 2024 on Jon's left shoulder. The operation provided Jon some relief.

However, the damage caused by Dr. Glazer's medical negligence, and the operation by Dr.

Zilberfarb necessitated by that negligence, had left permanent disabling injuries to Jon's left

shoulder, arm, and hand.

## COUNT ONE – MEDICAL MALPRACTICE AND NEGLIGENCE

26.     The preceding allegations are repeated and incorporated herein.

27.     Dr. Glazer and the Professional Corporation and the professionals under their

direction, had a duty to exercise the degree of skill, care, diligence, knowledge and learning

ordinarily exercised and possessed by the average qualified professional, taking into account the

existing state of knowledge in the practice of medicine and health care generally and their

respective fields specifically, including the duty to prevent Jon from undergoing unnecessary

surgical procedures, and to prevent Jon's shoulders from being overextended during neck surgery

such that his rotator cuffs and shoulders would not be injured; to protect him from adverse

medical conditions, the duty to evaluate and to mitigate against those risks, the duty to identify

those risks to the attention of the medical professional support staff assisting in Jon's care, the

duty to follow up and otherwise to exercise ordinary care to diagnose and to treat Jon post-

surgery, and the duty to inform Jon as to the likely cause of his shoulder pain and injuries, rather

than misleading him.

28.     Yet, nevertheless, the Responsible Parties wholly disregarding their duties

aforesaid, failed to exercise the degree of skill, care, diligence, knowledge and learning

ordinarily exercised and possessed by the average qualified professional, taking into account the existing state of knowledge in the practice of medicine and health care generally and their respective fields specifically, including the duty to prevent Jon from undergoing unnecessary surgical procedures, and to prevent Jon's shoulders from being overextended during neck surgery such that his rotator cuffs and shoulders were injured, causing bilateral rotator cuff tears, damaging the tendons and muscles that support the shoulder joint, leading to pain, weakness, and difficulty with arm movements, to protect him from adverse medical conditions, the duty to evaluate and to mitigate against those risks, the duty to identify those risks to the attention of the medical professional support staff assisting in Jon's care, the duty to follow up and otherwise to exercise ordinary care to diagnose and to treat Jon post-surgery, and the duty to inform Jon as to the likely cause of his shoulder pain and injuries, rather than misleading him.

29.    As a direct and proximate result of the Responsible Parties' negligent conduct, medical and related care was not properly coordinated between or provided by the medical providers and health professionals, who failed to take appropriate steps to protect Jon from foreseeable and avoidable harm.

30.    These failures directly and proximately caused Jon to suffer losses and damages, including, loss of normal use of his body, pain and suffering, loss of enjoyment of life, medical and other expenses, economic damages in the form of lost income, earning capacity and benefits, and other compensatory damages to the Plaintiff as allowed by law.

31.    At all relevant times, upon information and belief, each of the individual Responsible Parties was employed by or an agent of and was affiliated with the Professional Corporation and/or its affiliates. As employer of the individual Responsible Parties, the Professional Corporation is vicariously liable for their negligence.

## COUNT THREE – NEGLIGENCE OF THE PROFESSIONAL CORPORATION UNDER RESPONDEAT SUPERIOR

32.     The preceding allegations are repeated and incorporated herein.

33.     Each of the individual Responsible Parties were the express, apparent, and/or implied agents of the Professional Corporation. the Professional Corporation is liable for all of the negligent acts and omissions of these individuals and other negligent acts or omissions of their agents under the doctrines of respondent superior and vicarious liability.

34.     The Professional Corporation, through its agents and employees, including but not limited to its nurses, technicians, doctors, and other staff who were its express, apparent, and/or implied agents, had a duty to exercise the degree of skill, care, diligence, knowledge and learning ordinarily exercised and possessed by the average medical assistant, nurse, nurse practitioner, or other medical professional, taking into account the existing state of knowledge in the practice of medicine generally and specifically in their respective specialties, including the duty to prepare and to monitor a patient during surgery, and ensure that the patient's medical needs are met, and the duty to follow up and otherwise to exercise ordinary care to monitor and treat Jon and to protect him from adverse medical conditions.

35.     Yet, nevertheless, the Professional Corporation, disregarding its duties aforesaid, failed to exercise the degree of skill, care, diligence, knowledge and learning ordinarily exercised and possessed by the average medical assistant, nurse, nurse practitioner, or other medical professional, taking into account the existing state of knowledge in the practice of medicine generally and specifically in their respective specialties, including the duty to prepare and to monitor a patient during surgery, and ensure that the patient's medical needs are met, and the duty to follow up and otherwise to exercise ordinary care to monitor and treat Jon and to protect him from adverse medical conditions.

36.      As a direct and proximate result of the Responsible Parties' negligent conduct, medical and related care was not properly coordinated between or provided by the medical providers and health professionals, who failed to take appropriate steps to protect Jon from foreseeable and avoidable harm. Instead, due to their negligence, Jon suffered bilateral rotator cuff tears, damaging the tendons and muscles that support the shoulder joint, leading to pain, weakness, and difficulty with arm movements.

37.      These failures directly and proximately caused Jon to suffer losses and damages, including, loss of normal use of the body, loss of body parts, pain and suffering, loss of enjoyment of life, medical and other expenses, economic damages in the form of lost income, earning capacity and benefits, and other compensatory damages to the Plaintiff as allowed by law.

## COUNT FOUR – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

38.      The preceding allegations are repeated and incorporated herein.

39.      The Responsible Parties are liable to Jon for Negligent Infliction of Emotional Distress because the Responsible Parties' negligence caused Jon to suffer severe emotional distress a reasonable person would have suffered under the circumstances, and it was foreseeable that the Responsible Parties' negligence would cause him to suffer serious mental and emotional harm, accompanied by objective physical symptoms.

40.      As a direct and proximate result of the Responsible Parties' negligent conduct, medical and related care was not provided or properly coordinated between or provided by the medical providers and health professionals, who failed to take appropriate steps to protect Jon from foreseeable and avoidable harm, and Jon has suffered emotional pain and suffering, anguish, past and future healthcare expenses, and any and all other compensatory damages.

## COUNT FIVE – FRAUDULENT MISREPRESENTATION

41.    The preceding allegations are repeated and incorporated herein.

42.    The Responsible Parties, as health care professionals, had a fiduciary duty to Jon to treat Jon honestly and to represent to him accurate facts concerning his medical condition and the medical care provided to him.

43.    Yet, nevertheless, the Responsible Parties wholly disregarding their duties aforesaid, failed to communicate truthfully to Jon.

44.    Dr. Glazer knowingly informed Jon that his bilateral rotator cuff tears were not related to the March 2022 surgery but due to chronic rotator cuff disease, despite knowing that Jon's shoulders had been improperly overextended causing acute damage to his shoulders and rotator cuffs.

45.    These false representations were made in person to Jon in Dr. Glazer's offices on March 25, 2022, April 22, 2022, and by telephone on June 10, 2022. Particularly at the June 10, 2022, telephone conference, Dr. Glazer had in his possession the MRI of Jon's rotator cuffs that demonstrated, along with Jon's medical records and history, that he had suffered acute rotator cuff tears due to his shoulder having been negligently overextended in the March 2022 surgery conducted by and under the direct supervision of Dr. Glazer.

46.    Dr. Glazer's and the Responsible Parties' misrepresentations caused Jon to believe that his shoulder pain was not caused by their negligence in negligently overextending his shoulders during the March 2022 neck surgery, keeping him from information that would have revealed to him that the representations were false. As a result, Jon did not learn that he had claims against the Responsible Parties until in or about March 2024 when medical professionals alerted him to that fact.

## COUNT SIX – NEGLIGENT MISREPRESENTATION

47.     The preceding allegations are repeated and incorporated herein.

48.     The Responsible Parties, as health care professionals, had a fiduciary duty to Jon to treat Jon honestly and to represent to him accurate facts concerning his medical condition and the medical care provided to him.

49.     Yet, nevertheless, the Responsible Parties wholly disregarding their duties aforesaid, failed to communicate truthfully to Jon.

50.     Dr. Glazer negligently informed Jon that his rotator cuff tears were not related to the March 2022 surgery but due to chronic rotator cuff disease, despite knowing that Jon's shoulders had been improperly overextended causing acute damage to his shoulders and rotator cuffs.

51.     These misrepresentations were made in person to Jon in Dr. Glazer's offices on March 25, 2022, April 22, 2022, and by telephone on June 10, 2022. Particularly at the June 10, 2022, telephone conference, Dr. Glazer had in his possession the MRI of Jon's rotator cuffs that demonstrated, along with Jon's medical records and history, that he had suffered acute rotator cuff tears due to his shoulder having been negligently overextended in the March 2022 surgery conducted by and under the direct supervision of Dr. Glazer.

52.     Dr. Glazer's and the Responsible Parties' misrepresentations caused Jon to believe that his shoulder pain was not caused by their negligence in overextending his shoulders during the March 2022 neck surgery, keeping him from information that would have revealed to him that the representations were false. As a result, Jon did not learn that he had claims against the

Responsible Parties until in or about March 2023 when medical professionals alerted him to that fact.

## COUNT SEVEN: LOSS OF CONSORTIUM

53.     The preceding allegations are repeated and incorporated herein.

54.     The physical and emotional injuries Jon sustained from the injuries caused by the Responsible Parties adversely impacted his daily physical activities and the marital relations with his common law spouse, Tara.

55.     As a direct result of these injuries to her husband, Tara has suffered and continues to suffer a loss of consortium.

56.     As a direct and proximate result of their breaches of duties, Responsible Parties proximately caused Jon to suffer losses and damages, including physical injuries, incurred medical bills for his injuries, has suffered and continues to suffer substantial pain and suffering, loss of enjoyment of life, emotional distress, and permanent impact on his life, all which has caused damages to Tara for the loss of the marital care, comfort, and society of her spouse, Jon Pearson, and has incurred other damages which are in an amount within the jurisdiction of this court.

## JURY DEMAND

57.     Plaintiffs demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs Jon Pearson and Tara Gunnigle request that this Court grant the following relief:

A.    That process be issued and served on the Defendants and that they be required to file an answer with the Court within the time prescribed by law;

B.    Award the Plaintiffs compensatory and other appropriate damages to which they are entitled or which otherwise would be just in this case, in the sum certain of at least $1 million;

C.    Award Plaintiffs' attorneys' fees and costs;

D.    Award Plaintiffs' pre and post judgment interest; and

E.    Award Plaintiffs all other relief to which they may be entitled and as necessary and proper to do justice in this case.

This the 9th day of June 2025.

Respectfully submitted,

/s/ Roy S. McCandless
Roy S. McCandless
BBO#: 642055
**Roy S. McCandless, Esq., PLLC**
125 North State Street
Concord, New Hampshire 03301
Telephone: (603) 841-3671, Ext. 101
Facsimile: (603) 513-2799
roysmccandless@gmail.com